UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
AUG 1 5 2018
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

Mt. Hawley Insurance Company, §
§
*Plaintiff*, §
§
v. § Civil Action No. 5-18-cv-00252-OLG
§
Slay Engineering, Texas Multi-Chem, and §
Huser Construction Company, Inc., §
§
*Defendant*. §
§

## MEMORANDUM AND ORDER

On this day, the Court considered Defendant's Motion for Summary Judgment on the Duty to Defend (docket no. 11) ("Defendant's Motion") and Plaintiff's Motion for Summary Judgment (docket no. 13)[1] ("Plaintiff's Motion," and collectively with Defendant's Motion, the "Motions"). After considering the Motions and for the reasons set forth below, the Court finds that Defendant's Motion should be GRANTED and Plaintiff's Motion should be DENIED.

## BACKGROUND

The present case concerns a coverage dispute between a general contractor, Defendant Slay Engineering / Texas Multi-Chem / Huser Construction ("Defendant" or "Huser"), and its insurer, Plaintiff Mt. Hawley Insurance Company ("Plaintiff" or "Mt. Hawley"). Before beginning its substantive analysis of the Motions, the Court will first briefly summarize the relevant factual background and the parties' underlying insurance agreements.

---

[1] Plaintiff's Motion for Summary Judgment is asserted, in the alternative, as a Motion for Judgment on the Pleadings. *See* docket no. 13.

1

## A. Project Background and Relevant Chronology

On July 20, 2015, the City of Jourdanton (the "City") entered into a construction contract with Defendant Huser (a joint venture) to design and construct a municipal sports complex (the "Project"). The Project consisted of four little league baseball fields, a softball field, parking lots, and a new swimming pool. Huser entered into a subcontract with Cody Pools, Inc. ("Cody Pools") to design and build the swimming pool. Huser also entered a subcontract with Q-Haul, Inc. ("Q-Haul") to perform earthwork, grading, and storm drainage work at the site, including for the planned paved parking lots.

On January 10, 2015, after substantial completion of the Project, a Huser employee noticed cracks in the pool and in the parking lot paving. Huser placed Cody Pools on notice of the defective work and requested that Cody Pools provide a repair solution. Huser did not immediately place Q-Haul on notice because the parking lot cracks appeared to be minor. Cody Pools began repair work on the pool shortly thereafter. However, in early March 2015, a Huser employee again noticed that the pool cracks appeared to be worsening. Cody Pools and Huser were unable to agree on a future repair solution for the pool.

On May 3, 2017, the City notified Huser of several alleged deficiencies involving the swimming pool structure, asphalt paving, concrete flatwork and curbing, and overall site drainage. Throughout the summer of 2017, the City, Huser, Cody Pools and Q-Hall engaged engineers and conducted ongoing discussion as to how any defects to the Project could best be cured. Cody Pools asserted—through an engineer it had hired to evaluate the pool—that the pool structure was stable and that minor crack repairs would allow the pool to be operational for several years. However, on August 30, 2017, the City rejected Cody Pools' repair proposal.

On December 21, 2017, the City filed a lawsuit against Huser alleging breach of contract and negligence claims. *See City of Jourdanton v. Slay Engineering / Texas Multi-Chem / Huser Construction, LLC and North American Specialty Ins. Co.*, No. 17-12-1181-CVA (81st Judicial District Court of Atascosa County, Texas) (hereinafter, the "Underlying Suit"). On February 13, 2018, the City filed its First Amended Petition, which alleged—in part—that the "work performed by [Huser], its subcontractors and suppliers, was [] defective and not in compliance with the requirements of the agreement with the City or with the duties of care arising thereunder." Docket no. 11-12 ¶ 4.7. Specifically, the City alleged "substantial cracks in the swimming pool, parking lot, drives and other paved surfaces . . . and deficient site drainage." *Id.* at ¶ 3.3.

On February 21, 2018, following receipt of the First Amended Petition, Huser notified Plaintiff Mt. Hawley of the claims filed by the City and provided Mt. Hawley with the First Amended Petition. Five days later, the City filed a Second Amended Petition, which contained allegations substantially similar to those in the First Amended Petition. *See* docket no. 1-1 (the "Second Amended Petition" or "Petition"). Huser also provided Mt. Hawley with the City's Second Amended Petition, and it is the live pleading in the Underlying Suit. *See id.*

On March 14, 2018, Mt. Hawley acknowledged that it had received the Second Amended Petition and that its coverage analysis would be conducted based on the updated complaint, rather than based on the City's prior pleadings. *See* docket no. 11-15. On March 16, 2018, Mt. Hawley denied coverage to Huser based on certain exclusions in Huser's insurance policies with Mt. Hawley. *See* docket no. 11-16.

On March 16, 2018, Mt. Hawley filed this instant lawsuit seeking a judgment declaring that it has no duty to indemnify or defend Huser with respect to the allegations in the City's

Underlying Suit. *See* docket no. 1. On April 6, 2018, Mt. Hawley served Huser with this federal lawsuit. Defendant's Motion notes that on the same day, Mt. Hawley also served Huser with a separate federal complaint seeking a similar declaratory judgment (that will require the interpretation of the same underlying contract language) with respect to a separate Huser-related state court litigation in Harris County, Texas.[2] *See* docket no. 11 p. 6.

On April 27, 2018, Huser answered Mt. Hawley's federal complaint and filed counterclaims asserting that Mt. Hawley breached its agreement with Huser and violated the Texas Insurance Code by denying coverage and failing to pay Huser's claims and defense costs. *See* docket no. 6.

**B. Governing Mt. Hawley Insurance Policies**

With respect to the relevant period, Mt. Hawley issued two types of policies providing certain insurance coverage to Huser (collectively, the "Policies"): Commercial General Liability Policies spanning December 31, 2014 through January 1, 2019, *see, e.g.*, docket no. 1-2, and Commercial Excess Liability Policies issued for the same period, *see, e.g.*, docket no. 1-6. The terms of each of the Policies appear to be the same or substantially similar.

As a general matter, the Policies provide insurance coverage for "bodily injury" and "property damage." *See, e.g.*, docket no. 1-2 p. 4. Coverage under the Policies applies only if the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" during the "policy period." *Id.* An "occurrence," under the Policies, is defined as an accident, including continuous or repeated exposure to substantially the same

---

[2] Defendant's Motion states that Huser's other underlying case—for which it seeks coverage from Mt. Hawley—is *Eagle Heights Pleasanton, LLC v. Schaffer Mech. Co., Inc.*, No. 2018-09694, in Harris County, Texas. Upon a review of the court docket for the United States District Court for the Southern District of Texas, it appears that the associated federal action in which Mt. Hawley seeks similar declaratory relief is *Mt. Hawley Ins. Co. v. Huser Constr. Co., Inc.*, No. 4:18-CV-787 (S.D. Tex. filed Mar. 13, 2018).

general harmful conditions. *See id.* at pp. 18-19. "Property damage," as defined by the Policies, is (a) physical injury to tangible property, including all resulting loss of use of that property, and (b) loss of use of tangible property that is not physically injured. *See id.* at p. 19.

Further, pursuant to Section I.A of the Commercial General Liability Policies, Mt. Hawley "will have the right and duty to defend the insured against any 'suit' seeking . . . damages" related to any such covered "property damage" or "bodily injury." *Id.* at p. 4. However, the Policies state that Mt. Hawley has no duty to defend against any suit seeking damages for any "bodily injury" or "property damage" that is excluded from the Policies' coverage. *See id.*

The Policies' coverage has two relevant exclusions for the purpose of resolving the instant Motions. First, pursuant to Section I.2.l, coverage excludes "Damage To Your Work: "'[p]roperty damage" to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard." *Id.* at p. 8 (hereinafter, the "Your Work Exclusion"). However, the Policies provide that "[t]his exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." *Id.*

Second, each of the Policies contains a separate endorsement that specifies that coverage does not extend to any suit for "bodily injury" or "property damage" arising directly or indirectly out of a breach of "express or implied contract, breach of express or implied warranty, or fraud or misrepresentation regarding the formation, terms or performance of a contract." *See id.* at p. 52 (hereinafter, the "Breach of Contract Exclusion").

## STANDARD OF REVIEW

Summary judgment is appropriate as to a claim or part of a claim if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted." *S&W Enterprises, L.L.C. v. South Trust Bank of Alabama*, 315 F.3d 533, 537 (5th Cir. 2003) (citing *Celotex Corp. v. Caltrett*, 477 U.S. 317, 321-25 (1986)). "The nonmovant may not rest upon allegations in the pleadings or complaint, but must utilize summary judgment facts demonstrating the existence of a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986)). "All evidence and reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the non-movant." *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

Plaintiff's Motion and Defendant's Motion each ask the Court to interpret the Policies, and upon doing so, determine whether the damages claimed in the Underlying Suit are covered by the Policies. Specifically, Plaintiff's Motion seeks an order from this Court declaring that the Policies exclude coverage for the damages arising in the Underlying Suit, and therefore, Mt. Hawley has no duty to defend *and* no duty to indemnify Huser.[3] *See* docket no. 13 p. 17. On the other hand, Defendant's Motion seeks an order from this Court finding that the Policies

---

[3] On the same basis, Mt. Hawley also seeks summary judgment on Defendant's Texas Insurance Code counterclaims. *See* docket no. 13 pp. 16-17.

require Mt. Hawley to defend Huser in the City's Underlying Suit.[4] *See* docket no. 11 p. 20. Given that both Plaintiff's Motion and Defendant's Motion address identical issues related to the scope of the Policies' coverage and Mt. Hawley's duty to defend, the two Motions will be addressed together.

### I. Insurance Policy Interpretation Under Texas Law

The parties agree that Texas law governs the Court's substantive analysis in this diversity case. *See* docket nos. 11 p. 6, 13 p. 6 & 7 pp. 2-3; *see also Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 527-28 (5th Cir. 2004). Under Texas law, the interpretation of an insurance policy is a question of law for the court to determine. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010). The traditional rules for construction of contracts are applicable to an insurance contract. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Rentech Steel LLC*, 620 F.3d at 562. "An interpretation that gives a reasonable meaning to all provisions is preferable to one that leaves a portion of the policy useless, inexplicable, or creates surplusage." *Liberty Mut. Ins. Co. v. Am. Emp'rs Ins. Co.*, 556 S.W.2d 242, 245 (Tex. 1977). When construing a policy, all parts of the policy are read together to ascertain the agreement of the parties. *Forbau*, 876 S.W.2d at 133.

---

[4] The Court notes that Huser's counterclaims do not explicitly assert a claim for declaratory judgment in its favor with respect to the duty to defend. *See* docket no. 6. Thus, although the Court will necessarily determine whether Mt. Hawley has a duty to defend the Underlying Suit in resolving the instant Motions, the Court's Order will be limited to adjudicating *Mt. Hawley's claim* for declaratory relief. *See Chen v. Am. Family Mut. Ins. Co.*, No. 12-cv-1942-REB-MJW, 2013 WL 4434370, at *1 (D. Colo. Aug 15, 2013) (noting that a court may not issue a declaratory judgment in favor of party that had not asserted a claim for declaratory relief when resolving cross-motions for summary judgment in insurance coverage dispute). However, this treatment does not affect the Court's merits analysis, nor does the Court expect that it will impact the practical effect of this Order.

Moreover, if policy language is ambiguous, courts construe any ambiguity "strictly against the insurer and liberally in favor of the insured," *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987), and an "'even more stringent construction is required' where the ambiguity pertains to an 'exception or limitation on [the insured's] liability under the policy'." *Rentech Steel LLC*, 620 F.3d at 562-63 (quoting *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993)). Consequently, the court must adopt the "construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977).

Finally, when an insurance policy contains an endorsement that *directly conflicts* with the general policy language, the endorsement is controlling. *Westchester Fire Ins. v. Heddington Ins. Ltd.*, 883 F. Supp. 158, 165 (S.D. Tex. 1995). However, when possible, endorsements and policy provisions must be read and construed together. *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 115 (5th Cir. 2010).

## II. Mt. Hawley's Duty to Defend and/or Indemnify Huser

"In liability insurance policies generally, an insurer assumes both the duty to indemnify the insured . . . and the duty to defend any lawsuit brought against the insured that alleges and seeks damages for an event potentially covered by the policy, even if it is groundless, false, or fraudulent, subject to the terms of the policy." *D.R. Horton-Texas, Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 743 (Tex. 2009) (citations omitted).

However, the duty to defend and the duty to indemnify "are distinct and separate duties." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (citation

omitted). "An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W. 3d 487, 490 (Tex. 2008). "Thus, an insurer may have a duty to defend but, eventually, no obligation to indemnify." *Id.* at 490-91.

A. <u>Duty to Defend</u>

1. *"Eight Corners" Rule and Burden-Shifting Framework*

To determine whether Mt. Hawley has a duty to defend Huser in the Underlying Suit, the Court must apply the "eight corners" rule. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d, 305, 308 (Tex. 2006). "The rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant." *Id.*

When applying the "eight corners" rule, any ambiguities regarding the duty to defend are liberally construed in favor of the insured and are generally resolved in favor of the duty. *See Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). The duty to defend exists if the third-party plaintiff's factual allegations in the underlying suit "potentially support a covered claim." *Id.* at 490; *see also Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965) ("Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy."). As a result, if the third-party complaint potentially includes a covered claim, the insurer must defend the entire suit. *Zurich Am. Ins. Co.*, 268 S.W.3d at 491. The district court must focus its inquiry on the

alleged facts and circumstances of the origin of the damages, not on the asserted legal theories. *See Am. Home Assur. Co. v. United Space All., LLC,* 378 F.3d 482, 487 (5th Cir. 2004).

In determining whether Mt. Hawley has a duty to defend under the agreement, the initial burden is placed on Huser to demonstrate that coverage exists considering only the Policies and the City's Petition. *See Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.,* 197 F.3d 720, 723 (5th Cir. 1999). If the first step of the analysis is satisfied, the burden then shifts to Mt. Hawley to establish that one or more of the policy exclusions apply to negate any otherwise applicable duty to defend. *See id.*

In light of the allegations contained within the four corners of the petition in the Underlying Suit, Mt. Hawley concedes that—at least for the purposes of instant Motions—the first step of the analysis is satisfied.[5] For that reason, resolution of the duty to defend issue in Defendant's Motion and Plaintiff's Motion only requires the application of the second step of the applicable framework, and more specifically, an analysis of the impact of the Breach of Contract Exclusion in the Policies.

The parties' asserted interpretations of the Breach of Contract Exclusion and the Court's analysis of the exclusion's impact are discussed in detail below.

### 2. *Analysis of the Breach of Contract Exclusion*

In this case, Mt. Hawley argues that it "does not have a duty to defend Huser in the Underlying Action because all of the allegations in the Underlying Action are excluded by Mt. Hawley's Breach of Contract Exclusion." Docket no. 12 p.8. On the other hand, Huser

---

[5] Specifically, Mt. Hawley's response to Defendant's Motion states that "[f]or purposes of this summary-judgment motion, Mt. Hawley agrees the Underlying Action potentially alleges property damage covered by the policy's insuring agreement." Docket no. 12 p. 8. Similarly, in its own motion, Mt. Hawley states that the "claims against Huser potentially state a covered claim for property damage under the Mt. Hawley Policies." Docket no. 13 p. 9.

contends that the Breach of Contract Exclusion should not be interpreted so broadly as to preclude coverage related to damages caused by Huser's subcontractors. *See* docket no. 11 pp. 8-18.

For the reasons set forth below, the Court concludes that Mt. Hawley has not met its burden of demonstrating that the Breach of Contract Exclusion negates its duty to defend the Underlying Suit.

### a. *Causal Link Between Huser's Breach and the Underlying Suit*

As discussed above, the Breach of Contract Exclusion reads, in relevant part, that coverage "does not apply . . . [to] any claim or 'suit' for . . . 'property damage' . . . *arising directly or indirectly* out of" a breach of contract or breach of express or implied warranty. *See, e.g.*, docket no. 1-2 p. 52 (emphasis added).

The Court first must determine the appropriate scope of the term "arising out of" in the Breach of Contract Exclusion. Texas courts read the phrase "arising out of" to require "but for" causation. In interpreting another general commercial liability insurance policy, the Supreme Court of Texas has held that "'arise out of' means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is 'but for' causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co.*, 141 S.W.3d at 203 (internal citations omitted). Relying on *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 (5th Cir. 2003), Mt. Hawley contends that a policy exclusion preventing coverage for injuries "arising out of" particular conduct "need only bear an incidental relationship to the described conduct for the exclusion to apply." However, since *Sport Supply*, courts have made clear that any such "incidental relationship" must still be a causal one. *See Nat'l Fire Ins. Co. of Hartford v. Radiology Assocs., L.L.P.*, 439 Fed. App'x 293, 296 (5th Cir. 2011).

Apparently recognizing that some "causal" connection must be shown, Mt. Hawley appears to argue that the existence of the contract between Huser and the City may be a sufficient causal link between the alleged property damage and the underlying contract, such that the policy exclusion is triggered. Specifically, Mt. Hawley asserts that "but for the Contract, there would be no cause of action to bring against Huser." Docket no. 13 p. 12; *see also* docket 12 p. 13 ("[Huser's] liability would not exist but for the Contract.").

The problem with Mt. Hawley's comparison is that it conflates Huser's causation of "property damage" with Huser's ultimate contractual liability for economic losses. However, merely because Huser may ultimately be liable for certain of the City's economic losses under a breach of contract theory does not necessarily mean that all of the alleged property damage was causally attributable to Huser's alleged breach of its contract with the City.

Indeed, on that basis, another court has specifically rejected such a broad interpretation of "arising out of" as it is contained in the Mt. Hawley policy. In *Mt. Hawley Ins. Co. v. Aguilar*, No. SACV 07-00969, 2008 WL 11342656 (C.D. Cal., Feb. 2, 2008), the court considered Mt. Hawley's precise argument regarding the scope of the breach of contract exclusion contained in Mt. Hawley's insurance agreements. The *Aguilar* court rejected Mt. Hawley's proposed interpretation of the exclusion because it "would essentially defeat coverage in all instances because virtually all property damage that [the insured] would seek coverage for could be characterized as arising directly or indirectly out of a breach of contract or implied warranty." *Id.* at *3. Instead, the *Aguilar* court reasoned that "a more reasonable interpretation of this exclusion is that it pertains to [the insured's] liability for repairing its own deficient work or to specific contractual obligations that [the insured] has assumed." *Id.* Accordingly, the *Aguilar* court found

that—at the summary judgment stage—it could not conclude that coverage was excluded just because the insured contractor had been sued for a breach of contract by the property's owner.

The Court agrees with the general analysis by the *Aguilar* court (albeit in a slightly different posture), and the Court finds that the "directly or indirectly" and "arising out of" language requires that Mt. Hawley demonstrate that *Huser's* breach of contract was a "but for" (though not necessarily proximate) cause of the alleged property damage. The fact that all claims contained in the Underlying Suit have some relation to Huser's contract with the City or that Huser has been sued for breach of contract are not alone enough to trigger the Breach of Contract Exclusion. *See Scottsdale Ins. Co. v. Mt. Hawley Ins.Co.*, No. M-10-58, 2011 WL 9169946 (S.D. Tex. June 15, 2011) (same breach of contract exclusion does not apply where allegations of property damage are incidentally related to "the *existence* of a contract, [but] they do not necessarily bear an incidental relationship to a *breach* of that contract") (emphasis in original).

Applying that standard, the Court agrees with Mt. Hawley that Huser's breach of contract itself may have been one "but for" cause of the underlying "property damage." For example, the City's complaint specifically alleges that Huser breached the contract by failing to correct the defective, non-conforming work performed at the site, and presumably, some of the "property damage" may have arisen from Huser's alleged inaction. *See* docket no. 1-1 at ¶¶ 3.5 & 4.2. Thus, in an absolute sense, certain of the allegations might—in a vacuum—support Mt. Hawley's exclusion argument.

Unfortunately for Mt. Hawley, however, that alone is not enough to negate Mt. Hawley's duty to defend. For Mt. Hawley's duty to be erased, it would have to also be true that the facts alleged in the Underlying Suit demonstrate that there are *no other* independent, covered (non-excluded) "but for" causes of the alleged property damage. *See* Section II.B.2, *infra*. Therefore,

13

the Court must determine (i) whether there were other independent "but for" causes of the "property damage" at the basis of the Underlying Suit, and (ii) if so, whether those causes of the "property damage" are also excluded by the Policies.

### b. Subcontractors' Independent Causation of the Injury

"When two separate events—one that is excluded and one that is covered by the general liability policy—may independently have caused the accident, Texas law mandates that the general liability policy also provide coverage despite the exclusion." *EMCASCO Ins. Co. v. Am. Intern. Specialty Lines Ins. Co.*, 438 F.3d 519, 528 (5th Cir. 2006); *Utica,* 141 S.W.3d at 204 ("In cases involving separate and independent causation, the covered event and the excluded event each independently cause the plaintiff's injury, and the insurer must provide coverage despite the exclusion."). The City's Petition in the Underlying Suit specifically asserts that "work performed by [Huser], *its subcontractors and suppliers*, was [] defective." Docket no. 1-1 p. 5 (emphasis added). As such, the face of the Petition clearly alleges that entities other than Huser are responsible for the allegedly defective work and the resulting damage, either in whole or in part.[6]

Therefore, the Court finds that the allegations in the City's Petition in the Underlying Suit leave open the possibility that the property damage *may* have occurred "even in the absence of" a

---

[6] The fact that the property damage was caused by Huser's subcontractors is also what makes this case distinguishable from two cases cited repeatedly by Mt. Hawley in its briefing. In both *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453 (5th Cir. 2003) and *Scottsdale Ins. Co.v. Mt. Hawley Ins. Co.*, No. M-10-58, 2011 WL 9169946 (S.D. Tex. June 15, 2011), the damage and injuries that were the basis for the underlying lawsuits were allegedly caused by faulty workmanship (and the resulting breach of contract) *by the insured party*. In this case, the allegations in the Underlying Suit make clear that Huser's subcontractors are allegedly responsible for the alleged faulty workmanship that resulted in the "property damage." Neither the *Sport Supply* or *Scottsdale* opinions involve an analysis of whether a non-excluded cause also independently resulted in the underlying "property damage".

14

breach of contract or implied duty by Huser.[7] *See Utica,* 141 S.W.3d at 205 (concluding that insurer had duty to defend when injury or damage "could" have occurred even absent the excluded conduct). Thus, Mt. Hawley has a duty to defend Huser in the Underlying Suit, *unless* the other alleged "but for" causes—defective work by Huser's subcontractors and suppliers—would also be excluded under the contract. The Court analyzes that issue below.

### c. *The Subcontractor Exception to the "Your Work" Exclusion*

As discussed above, the Policies contain the Your Work Exclusion which bars coverage for certain "property damage" arising directly from Huser's own work. *See* Background, *supra.* However, the Your Work Exclusion contains an exception that explicitly states that coverage is not excluded "if the damaged work or the work out of which the damage arises *was performed on your behalf by a subcontractor.*" Docket no. 1-2 p. 8 (emphasis added).

Mt. Hawley argues that the subcontractor exception to the Your Work Exclusion is "irrelevant" because it has been overridden by the endorsement containing the Breach of Contract Exclusion. *See* docket no. 12 p. 14. Thus, according to Mt. Hawley, Huser's subcontractors' alleged failures are also subsumed by the Breach of Contract Exclusion because their work was incidentally related to Huser's work and breach of contract. *See id.* In response, Huser asserts that such an interpretation would be improper because it would require the Court to read the subcontractor exception out of the Policies. *See* docket no. 11 p. 19.

Although it is true that policy endorsements control over general policy language in cases of direct conflict, *Westchester Fire Ins.,* 883 F. Supp. at 165, the Court is obligated to read endorsements and policy provisions together and attempt to give meaning to all component parts

---

[7] The Court reiterates that this conclusion is based on the allegations in the City's Petition, and the Court is mindful that the evidence in the Underlying Suit may ultimately show otherwise. As an example, the Court is not privy to the details regarding Huser's agreement with the City or Huser's exact obligations pursuant to that contract.

of the agreement. *See Mid-Continent Cas. Co.,* 614 F.3d at 115. Thus, if the endorsements and the general policy language can be reasonably read in a way such that they can both be given meaning without forcing a direct conflict, the Court should do so. *See id.*

Under Section I.2.1 of the Policies, the coverage provided by Mt. Hawley excludes damage to "your work arising out of it or any part of it." *Id.* at p. 8. Courts interpreting "your work" exclusions have stated that they are intended to preclude coverage for property damage to the insured's work. *See Am. Home Assur. Co. v. Cat Tech, L.L.C.,* 660 F.3d 216, 222 (5th Cir. 2011). However, the Supreme Court of Texas has also explicitly described the purpose of the subcontractor exception to "your work" exclusions, how the exception should be interpreted, and how it is intended to distinguish between work conducted by the insured and work performed by its subcontractors. *See Lamar Homes, Inc.,* 242 S.W.3d at 11. Specifically, in *Lamar Homes*, the Supreme Court of Texas stated that:

> [T]his exception was added to protect the insured from the consequences of a subcontractor's faulty workmanship causing 'property damage.' Thus, when a general contractor becomes liable for damage to work performed by a subcontractor . . . the subcontractor exception preserves coverage that the 'your-work' exclusion would otherwise negate.

*Id.*

As discussed above in Section II.A.2.a of this Order, a natural reading of the Breach of Contract Exclusion is that "it pertains to [the insured's] liability for repairing its own deficient work or to specific contractual obligations that [the insured] has assumed." *See Aguilar,* 2008 WL 11342656, at *3. On the other hand, it is not natural to interpret the Breach of Contract Exclusion such that it encompasses all work incidentally related to the Project regardless of the party that performed the work or the capacity in which it did so. Indeed, doing so in this case would both (i) *unnecessarily* render the subcontractor exception to the Your Work Exclusion

without meaning, and (ii) mean that the Court has *impermissibly* resolved any potential ambiguity related to the scope of the exclusions in favor of the *insurer*, rather than the *insured*.

Accordingly, the Court declines to adopt the sweeping interpretation asserted by Mt. Hawley, and instead finds that the Policies should be interpreted such that the subcontractor exception to the Your Work Exclusion still has meaning.[8]

### 3. *Conclusion*

In sum, the Court finds that the allegations in the underlying Petition demonstrate that (i) Huser's subcontractors may have been an independent "but for" cause of the "property damage," and (ii) if so, coverage for that damage is not excluded by the Policies' Breach of Contract Exclusion. For that reason, the Court concludes that the allegations in the Underlying Suit "potentially support a covered claim," *Zurich Am. Ins. Co.*, 268 S.W. 3d at 490, and thus, that Mt. Hawley has a duty to defend Huser in the Underlying Suit.

### B. Duty to Indemnify

Unlike an insurer's duty to defend—which is determined on the facts alleged in the underlying complaint—an insurer's duty to indemnify is determined by the "facts actually established in the underlying suit." *D.R. Horton-Texas*, 300 S.W.3d at 744. Specifically, the Supreme Court of Texas has stated that:

> The insurer's duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of

---

[8] It also appears that the Policies contain copyrighted material from (or are otherwise based on standard material from) the Insurance Services Office. *See, e.g.*, docket no. 1-2 ("Includes copyrighted material of Insurance Services Office."). Other courts have noted that that the Insurance Services Office issues an endorsement that may be included in commercial general liability policies that explicitly eliminates the subcontractor exception to the "your work" exclusion. *See Lamar Homes*, 242 S.W.3d at 12. Had the parties intended to eliminate coverage for all damage caused by subcontractors' performance, the inclusion of that endorsement—*in addition to* the Breach of Contract Exclusion endorsement—may have been a more straightforward approach. *See id.*

17

the policy. Evidence is usually necessary in the coverage litigation to establish or refute an insurer's duty to indemnify.

*Id.* As such, "[n]o duty to indemnify arises *unless the underlying litigation establishes liability for damages* covered by the insuring agreement of the policy." *Great Am. Lloyds Ins. Co. v. Mittlestadt,* 109 S.W.3d 784, 786 (Tex. App.—Fort Worth 2003, no pet.) (emphasis in original); *see Farmers Texas Cnty. Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex. 1997) ("It may sometimes be necessary to defer resolution of indemnity issues until the liability litigation is resolved."). It is on this basis that Huser asserts that Mt. Hawley's request for judgment with respect to the issue of indemnification is premature until liability has been determined in the Underlying Suit. *See* docket no. 17 pp. 6-7.

Mt. Hawley's request for summary judgment notes that there is an exception to the general rule that indemnification can only be determined once the scope of liability has been established. Indeed, the Supreme Court of Texas has held that the duty to indemnify may be justiciable before liability is determined "when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *See Griffin,* 955 S.W.2d at 84. Thus, for the same reasons Mt. Hawley contends that coverage is excluded and it has no duty to defend, Mt. Hawley also contends it has no duty to indemnify.

As set forth in the prior sections, the Court has concluded that the facts alleged in the underlying third-party Petition do not demonstrate that Mt. Hawley's duty to defend has been negated, and instead demonstrate that Mt. Hawley must defend Huser in the Underlying Suit. *See* Section II.A, *supra*. Accordingly, the narrow exception set forth in *Griffin* does not apply, and the Court believes that it would be premature at this stage to determine to what extent—if any—Mt. Hawley must indemnify Huser for damages from the Underlying Suit.

For that reason, Plaintiff's Motion must be denied to the extent it seeks judgment with respect to the question of indemnification. However, the Court's denial is made without prejudice to Mt. Hawley again seeking judgment with respect to its indemnification duty if "the facts actually established" in the Underlying Suit demonstrate that the underlying "property damage" is not in fact covered under the Policies.

### III. Huser's Texas Insurance Code Claims

Mt. Hawley also seeks summary judgment as to Huser's counterclaims under the Texas Insurance Code, which assert that Mt. Hawley acted in bad faith in denying coverage. *See* docket no. 13 pp. 16-17. Mt. Hawley's argument is premised on the fact that summary judgment is generally appropriate on statutory bad-faith denial claims if the insurer has prevailed in the dispute regarding coverage. *See USAA Texas Lloyds Co. v. Menchaca*, No. 14-0721, 2018 WL 1866041, *5 (Tex. April 13, 2018) ("[A]n insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits.") (emphasis in original). Thus, because Mt. Hawley asserts that the Policies do not provide coverage for Huser, it also asserts that Huser's Texas Insurance Code claims must fail.

As discussed in the prior sections, at this stage, the Court is unable to conclude that the "property damage" in the Underlying Suit is not covered by the Policies. Because no other specific bases have been provided as to why Mt. Hawley is entitled to summary judgment with respect to Huser's statutory claims, the Court will deny Plaintiff's Motion as to the Texas Insurance Code claims. However, as with its denial on the issue of indemnification, the Court's denial of Plaintiff's Motion with respect to Huser's Texas Insurance Code claims is also made without prejudice to Plaintiff again seeking judgment on the issue at a later date, if appropriate.

## CONCLUSION AND ORDER

As set forth above, the Court finds that Plaintiff Mt. Hawley has a duty to defend Huser in the Underlying Suit. Accordingly, **IT IS THEREFORE ORDERED** that Defendant Huser's Motion for Summary Judgment (docket no. 11) is **GRANTED**, and summary judgment is issued in favor of Huser with respect to Mt. Hawley's request for declaratory judgment on the issue of the duty to defend.

**IT IS FURTHER ORDERED** that Plaintiff Mt. Hawley's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment (docket no. 13) is **DENIED**. However, with respect to the issues of (i) Plaintiff's indemnification of Defendant and (ii) Defendant's Texas Insurance Code counterclaims, the denial of Plaintiff's Motion is made without prejudice to Plaintiff again seeking judgment on those issues at a later date, if appropriate in light of the proceedings in the Underlying Suit.

**IT IS SO ORDERED.**

SIGNED this 15 day of August, 2018.

**ORLANDO L. GARCIA**
**Chief United States District Judge**